UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL-MOGUL WORLD WIDE, INC., and
FEDERAL-MOGUL CORPORATION,

        Plaintiffs,                  Case No. 11-15480

v.                                        HON. MARIANNE O. BATTANI

NJT ENTERPRISES d/b/a MAYCO
INTERNATIONAL LLC, and JVIS-USA LLC,

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

Before the Court is Plaintiff Federal-Mogul Worldwide Inc. and Federal Mogul Corp.'s (collectively "Federal-Mogul") Motion for a Preliminary Injunction (Doc. No. 15). The Court heard oral argument on April 5, 2012, and at the conclusion of the hearing, took this matter under advisement. For the reasons that follow, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.

**I.    STATEMENT OF FACTS**

Federal-Mogul, an automotive supplier, received U.S. Patent No. 6, 234,439 (the '439 Patent), entitled "Illuminated Cup Holder Assembly," on May 22, 2001. The invention "relates to distributed lighting systems, and particularly distributed lighting systems involving the use of waveguides to illuminate portions of a vehicle interior." (Doc. No. 16, Decl. of Meyer-Wendt, Ex. 1). The patented assembly is comprised of three main parts: a top portion, a bottom portion, and a waveguide sandwiched in

between the two. (Id.) Waveguides are lengths of plastic that propagate light through internal reflection. (Id. at ¶ 4). The patented cup holder assembly waveguide allows for single light sources, such as an LED, to propagate light around the entire circumference of one or more cup holders. (Id.)

Defendants NJT Enterprises and JVIS-USA LLC (collectively "Mayco") are Tier 1 suppliers of injection molded plastic products for automobile manufacturers. In October 2009, Mayco and Federal-Mogul entered into a Mutual Confidentiality Agreement to facilitate the joint development of a cup holder assembly for the 2011 Jeep Grand Cherokee and 2011 Dodge Durango. (Id. at ¶ 7).

In December 2009, Federal-Mogul provided a copy of the '439 Patent to Mayco. (Id. at ¶ 8). Federal-Mogul supplied the electronics, waveguide, and bottom portion of the cup holder assembly--the WK-LED for the 2011 Jeep Grand Cherokee and the WD-LED for the Doge Durango--to Mayco. Mayco completed the assembly, and sold the product to Chrysler. Federal-Mogul manufactured and supplied these cup holders from June 2010 through October 2011, when Mayco notified Federal-Mogul that the supply arrangement would be terminated, and Mayco would manufacture the parts. (Id. at ¶¶ 7-9).

Federal-Mogul notified Mayco in November 2011, as to how the accused cup holder assemblies infringes the '439 patent. (Doc. No. 15, Ex. 3). After Mayco denied infringement, (Doc. No. 15, Ex. 4), Federal-Mogul filed suit.

## II.    STANDARD OF REVIEW

A preliminary injunction is an extraordinary measure that the Sixth Circuit has characterized as "one of the most drastic tools in the arsenal of judicial remedies."

Bonnell v. Lorenzo, 241 F.3d 800, 808 (6th Cir. 2001) (quotation omitted).  Accordingly, it is the movant's burden to show that a preliminary injunction is necessary.  See United States Student Ass'n Found. v. Land, 546 F.3d 373, 380 (6th Cir. 2008).  In considering a motion for preliminary injunction, the Court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits;
>
> (2) whether the movant would suffer irreparable injury without the injunction;
>
> (3) whether issuance of the injunction would cause substantial harm to others; and
>
> (4) whether the public interest would be served by the issuance of the injunction.

Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007).

## IV.  ANALYSIS

### A.  Likelihood of success

To establish a likelihood of success on the merits in a patent infringement claim, Federal-Mogul must demonstrate that: (1) proof of infringement is likely, "and (2) any challenges to the validity and enforceability of its patent lack substantial merit." Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343, 1348 (Fed. Cir. 2003) (internal quotation marks and citation omitted).  With respect to the first factor, an infringement analysis "involves two steps in which the court first determines the correct claim scope, and then compares the properly construed claim to the accused method or device to determine whether all of the claim limitations are present either literally or by a substantial equivalent."  RF Delaware, Inc. v. Pacific Keystone Tech., Inc., 326 F.3d 1255, 1255

(Fed. Cir. 2003) (citation omitted).  As to the second factor, in general, "a patent shall be presumed valid," 35 U.S.C. § 282, and "the party asserting invalidity has the burden of showing invalidity by clear and convincing evidence."  WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1355 (Fed. Cir. 1999) (citation omitted).

The parties dispute Federal-Mogul's likelihood of success on two grounds: whether claim construction supports infringement; and whether the patent is entitled to the presumption of validity.  Each is discussed below.

### 1. Claim Construction

To assess whether Mayco's cup holder assembly infringes on the '439 Patent, the Court must construe the claim to determine its scope and meaning and then compare the devices.  Hilgraeve Corp. v. Symantect Corp., 265 F.3d 1336, 1341 (Fed. Cir. 2001).  Construction need not be comprehensive on a motion for preliminary injunction.

The claims of a patent define the invention.  Aro Mfg., Co. v. Convertible Top Replacement Co., 365 U.S. 336, 339 (1961).  Consequently, this Court's claim construction analysis begins with a review of the claim language itself.  Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112 ¶ 2).  Further, in reviewing the language, the Court accords a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention.  See, e.g., SmithKline Beecham Corp. v. Apotex Corp., 365 F.3d 1306, 1313 (Fed. Cir. 2004).

The claim language in Claim 1 reads:

> 1.  A cup holder assembly for use in a vehicle comprising:
>
> an elongated waveguide;
>
> a cup holder bottom portion including a base and a side wall extending up from the base to define a cup-receiving space, the bottom portion further including a waveguide support disposed above the base, with at least a portion of the waveguide disposed on the waveguide support;
>
> a cup holder top portion disposed over the bottom portion and the waveguide, the top portion including a shield extending over the waveguide, whereby said waveguide is adapted to distribute the light at said cup holder.

'439 Patent, Claim 1.  A waveguide as defined in the specification as "a length of plastic that propagates light through internal reflection."  (See Doc. No. 16, ¶ 10).

Claim 2 depends on Claim 1.  It reads as follows:

> 2.  The illuminated cup holder assembly of claim 1 wherein the waveguide support is outside the cup-receiving space.

According to Federal-Mogul's preliminary claim chart, Mayco's accused cup holder includes a waveguide, a bottom portion with a base and sidewall, a waveguide support, and a top portion that rests on the waveguide and the bottom portion in the accused cup holder assembly.  (Doc. No. 15, Ex. 3).  The top portion includes a lower surface that is a shield extending over the waveguide which ensures that light is directed outwardly into the cup holder space and not into the eyes of the driver.  Based on this review, Federal Mogul concluded that all the limitations of Claim 1 and Claim 2 are in the accused product.  (Doc. No. 16 at ¶ 10).

Mayco disagreed.  Initially, Mayco distinguished the accused cup holder as a one piece structure.  (Doc. No. 15, Ex. 4).  Additionally, in the response to Federal-Mogul's

motion, Mayco raised other distinctions: the '439 Patent does not disclose a direct lighting configuration in which the occupant can see the light source; Mayco's console cover, which has nothing to do with the cup holder, does not shield a waveguide; it provides direct illumination, and the light is directed upwardly.  Therefore, Mayco concludes there is no infringement.

Mayco's assertion that the function of the shield is to direct light downwardly, which is imported from the specification, raises a distinction that Mayco believes renders the accused cup holder non-infringing.  See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001) (where specifications makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claim of the patent."). Mayco is correct that the specification states in several places that light is directed "downwardly.  (See Doc. No. 20, Ex. 4, col. 1, lines 66-67; col. 2, lines 40-42; col. 2, line 54; col. 2, lines 61-62; col. 3, lines 4-5; col. 3, lines 10-11).  Contrary to the specification, however, the language in Claim 1 does not require that the light be directed downwardly.  Claim 1 merely includes a "shield extending over the waveguide whereby [the] waveguide is adapted to distribute light at [the] cup holder."  ('439 Patent, Claim 1).

Mayco's argument turns on language in the written description of the patent as support for its position of non-infringement.  Federal-Mogul asks the Court to reject Mayco's position, arguing that the specification should not be used to limit the claim. The Court finds authority supports Federal-Moguls' position.

In general, a court may use the explanations contained in the written description to understand the claim language, provided claim limitations that are not a part of the

claim are not imported.  Courts may not "read [claims] restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.' " Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115-17 (Fed. Cir. 2004).

For purposes of this motion, the Court declines to narrow the claim language in Claim 1, which does not require that the light be directed downward.  The Court's reading of Claim 1 is not altered by the fact that '439 Patent does not expressly mention a "direct" lighting configuration in which the occupant can see the light source–light directed upwardly.  (Doc. No. 20, Ex. 1 Mayer-Wendt Dep. at 37-38).  Nor is it altered by the admission of Federal Mogul's R & D Technology Manger in the Global Lighting subdivision of the Vehicle Safety and Protection Department that Mayco's "halo" is visible to occupants.  Even with this distinction, Meyer-Wendt, declared that the Mayco cup holder assembly was infringing, and Mayco does not offer a contrary expert opinion. (See Doc. No. 16, p. 5).

Accordingly, for purposes of the preliminary injunction assessment, the Court relies on the claim language itself, which only requires the inclusion of a shield extending over the waveguide–which distributes light at the cup holder.  The claim language does not include any distinction based on the direction of the light, and the Court finds that Federal-Mogul is likely to succeed on the merits relative to claim construction.

### 2. Presumption of Validity

In addition to the claim construction disagreement, the parties dispute the validity and enforceability of the '439 Patent.  Mayco argues that Federal-Mogul's own prior art

patents show that each limitation of the asserted claims was anticipated under 35 U.S.C. § 102(a) and (e).  In support of its position, Mayco relies on the provisional patent application, which eventually was issued as U.S. Patent No. 7,220,011 (the '011 Patent).  (Doc. No. 20, Ex. 5).  According to Mayco, the provision patent application, which was filed before the '439 Patent, disclosed a vehicle cup holder having a waveguide that creates a visible halo around the cup holder, and includes every limitation of Claims 1 and 2 of the '439 patent.

For a validity challenge to succeed during preliminary injunction proceedings, it must raise a substantial question.  See, e.g., Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1352, 54 USPQ2d 1299, 1308 (Fed. Cir. 2000) (holding that the allegedly anticipatory prior art references sufficiently raised a question of invalidity to deny a preliminary injunction, even though summary judgment of anticipation based on the same references was not supported).  Further, "[a] prior art reference which expressly or inherently contains each and every limitation of the claimed subject matter anticipates and invalidates." Schering Corp. v. Geneva Pharmaceuticals, 339 F.3d 1373, 1379 (Fed. Cir. 2003).  Here, Federal-Mogul raises a material distinction between the cup holder assembly and the illuminated halo disclosed in the prior art '011 patent–the '011 patent is directed to a electroluminescent lamp, which is self-reflecting whereas the waveguide reflects light.  Moreover, the focus of the other earlier applications referenced by Mayco was the waveguide itself, and the '439 patent is directed to a support structure for the waveguide in the form of a cup holder.  Accordingly, the Court finds a substantial question has not been raised.

Mayco next asserts that the '439 Patent is invalid because Federal-Mogul failed to name all of the inventors of the '439 Patent.  See 35 U.S.C. § 102(2); Electronic Planroom Inc. v. McGraw-Hill Co., 135 F. Supp.2d 805, 826 (E. D. Mich. 2001) (observing that the "patent by another" requirement is satisfied "where the inventive entity listed on a prior art patent overlaps with the inventive entity listed on a later patent, but is not identical to the latter entity)".  Section 102(a) covers inventions known or used by others in the U.S. or patented or described in a printed publication before the invention by the current applicant.

Mayco is correct that the list of inventors on the '439 Patent is not the same list of inventors on prior art.  An inventor's own work cannot be used as a prior art reference to prove invalidation.  See Riverwood Int'l Corp. v. R.A. Jones & Co., 324 F.3d 1346, 1356 (Fed. Cir. 2003) (addressing whether a patent listing multiple inventors could be a 102(e) reference against a later patent listing only one of the inventors).  Courts are called to look beyond the listing of inventors and determine whether the inventive entity of the subject matter alleged to be prior art is the same as the actual inventive entity for the specifically challenged claim.  "What is significant is not merely the differences in the listed inventors, but whether the portions of the reference relied on as prior art, and the subject matter of the claims in question, represent the work of a common inventive entity."  Id. at 1356.  In Riverview, the appellate court held that where an inventor presents evidence that he was the sole inventor of the specific subject disclosed in the earlier patent sought to be used to invalidate the later patent, the differences in the listed inventors is not significant where the reference relied upon as prior art in the subject matter of the claim in question represents the work of a common invented entity.

Consequently, Mayco has not met its burden to show that the '439 Patent cannot survive scrutiny under 35 U.S.C. § 102.

Finally, Mayco argues that the patent is unenforceable because the Examiner was unaware of the patent applications that were pending at the time of the '439 Patent. Mayco argues that Federal-Mogul, the inventors and their patent counsel had an affirmative duty to disclose the co-pending applications under 37 C.F.R. 1.56.  The co-pending applications were material to the patentability of the '439 Patent, and the decision had to be deliberate given the inventors as well as their patent counsel were involved in and fully aware of the co-pending applications.  Mayco concludes that the failure to disclose gives rise to the unenforceability of the '439 Patent.

The Court declines to infer such intent from circumstantial evidence.  Mayco has advanced no evidence demonstrating a specific intent to deceive, particularly given the different focus of the earlier applications.  In Therasense Inc. v. Becton, Dickinson and Co., 649 F.3d 1376 (Fed. Cir. 2011), the court held that a party alleging unenforceability must prove a specific intent to deceive the PTO by clear and convincing evidence.

In sum, the Court finds that Federal-Mogul has demonstrated the likelihood of success on the merits.

### B. Irreparable Harm

Next the Court considers whether Federal-Mogul will suffer irreparable harm in the absence of an injunction.  Irreparable injury is injury so great that an award after litigation has concluded would be inadequate to fully compensate the injured party. Aluminum Workers Int'l Union v. Consol. Aluminum Corp., 696 F.2d 437, 443 (6th Cir. 1982).  "Mere injuries, however substantial, in terms of money, time and energy

necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974). Furthermore, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991).

Federal-Mogul asserts that the threat of loss of substantially all of its business with Chrysler constitutes irreparable harm. The financial damage will discourage investment in research and discourage innovation.

This argument lacks record support. Federal-Mogul continues to supply illuminated cup holders for many 2012 vehicles. What occurred here is a mere reduction in sales, which does not constitute irreparable harm. Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679 (Fed. Cir. 1990). Irreparable harm includes loss of goodwill, damage to reputation, loss of business opportunities, and price erosion. Celsis in Vitro, Inc. v. CellzDirect, Inc., 2012 WL 34381 at * 7 (Fed. Cir. 2012). Federal-Mogul did not provide any evidence to support these harms. Accordingly, it failed to meet its burden to show irreparable harm.

### C. Balancing of Hardships

The third factor in determining whether a preliminary injunction should issue requires a court to examine the balance of the hardships between the two parties. Consequently, this Court weighs the hardship to Federal-Mogul if no injunction is entered against the harm to Mayco if the injunction is granted incorrectly.

Federal-Mogul relies on its patented products as a key component of its automotive interiors business, and these products were the result of significant investment in research and development. (Doc. No 16 at ¶ 12). Its position in the marketplace could be seriously eroded because Mayco is undercutting the price by self-sourcing. (Id.) In contrast, Federal-Mogul concludes that Mayco's harm is minimal because the obvious course of action is simply to resume sourcing their cup holders to Federal-Mogul.

Mayco disagrees. First and foremost, Mayco notes that Federal-Mogul's product was replaced due to poor quality and financial reasons. Specifically, there was a problem with unevenness or hot spots in the illumination ring on Federal-Mogul's cup holder, (Doc. No. 20, Ex. 1), and retention fingers were breaking. The evidence shows that these problems occurred pre-production, and even if the new supplier provides a better product, the record does not support that the quality drove Mayco's decision to find a new supplier.

The same cannot be said relative to the cost of the product. According to Mayco, Chrysler paid Mayco $7.68 per cup holder supplied by Federal-Mogul, but Federal-Mogul charged Mayco between $62 and $16 for each of the first $20,000 cup holders. Even at the full production price of $8.19 per cup holder charged by Federal-Mogul, Mayco lost money on every cup holder it supplied to Chrysler. (Doc. No. 20, Ex. 11).

In addition, the bulk of Mayco's business at the Clinton Township facility is dedicated to manufacturing the accused console, and Mayco asserts that a preliminary injunction will result in the shutdown and nearly all of the 150 employees will be out of a job. It adds that it is set to earn more than 450 million in revenue, which will be lost if

the injunction is entered.  In contrast, Federal-Mogul's cup holder business is expanding, not contracting.

In response, Federal-Mogul notes that Mayco is not selling a stand alone cup holder to Chrysler, and that Mayco sells the larger shifting console for a profit.  Further, Mayco's declarant could not quantify how many, if any, employees would lose their jobs if the cup holders were again supplied by Federal-Mogul.  (Doc. No. 27, Ex. 3).  Even if Mayco inflated its damage, a balancing of the hardships weighs in its favor.  Mayco certainly will suffer some financial harm in purchasing a product for more than it can charge, and Federal-Mogul did not undermine the assertion that Mayco would have to offset its losses, perhaps at the expense of employees.

### D.  Public Interest

The final factor the Court considers in determining whether to issue a preliminary injunction is the impact it will have on the public interest.  Courts recognize a general public interest in protecting patent rights.  See Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 684 (Fed. Cir. 1990).  Further, the Court recognizes that there is a cost in creating useful, aesthetically pleasing products and research and development costs cannot be ignored.  However, the public also has an interest in promoting market competition.  Id.  Accordingly, consideration of this factor fails to tip the balance in favor of either party.

## V.  CONCLUSION

The analysis of the four preliminary injunction factors demonstrates that Federal-Mogul has failed to show irreparable harm.  Accordingly, the Court **DENIES** the motion.

**IT IS SO ORDERED.**

          s/Marianne O. Battani
          MARIANNE O. BATTANI
          UNITED STATES DISTRICT JUDGE

DATED: August 14, 2012


## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

          s/Bernadette M. Thebolt
          CASE MANAGER