UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL-MOGUL WORLD WIDE, INC., and
FEDERAL-MOGUL CORPORATION,

        Plaintiffs,                Case No. 11-15480

v.                                   HON. MARIANNE O. BATTANI

NJT ENTERPRISES d/b/a MAYCO
INTERNATIONAL LLC, and JVIS-USA LLC,

        Defendants.

_____/

## OPINION AND ORDER REGARDING CLAIM CONSTRUCTION

This matter is before the Court to construe disputed patent claim terms in United States Patent No. 6, 234,429 (the '439 Patent).  After Plaintiffs Federal-Mogul Worldwide Inc. (FMWW) and Federal Mogul Corp.'s (FMC) filed their Opening Claim Construction Brief (Doc. No. 56), the Court dismissed FMC from Count I, which advances the patent infringement claim.  (See Doc. No. 103).

The Court heard oral argument on August 6, 2013.  At the hearing, the parties agreed that the only term requiring construction at this time is "shield extending over the waveguide."  At the conclusion of the hearing, the Court took this matter under advisement.  The Court construes the claim as indicated below.

**I. INTRODUCTION**

FMWW alleges that Defendants NJT Enterprises and JVIS-USA, LLC, (collectively "Mayco") committed patent infringement with respect to the '439 Patent, entitled "Illuminated Cup Holder Assembly."  In their Complaint, Plaintiffs assert that the

accused product is "virtually identical to an illuminated cup holder assembly" that FMC manufactured for Defendants before the parties ended their relationship.

The term requiring construction is found in Claim 1, which reads:

> 1. A cup holder assembly for use in a vehicle comprising:
> an elongated waveguide;
>
> a cup holder bottom portion including a base and a side wall extending up from the base to define a cup-receiving space, the bottom portion further including a waveguide support disposed above the base, with at least a portion of the waveguide disposed on the waveguide support;
>
> a cup holder top portion disposed over the bottom portion and the waveguide, the top portion **including a shield extending over the waveguide**, whereby said waveguide is adapted to distribute the light at said cup holder.

(Doc. No. 1, Ex. 1 '439 Patent at 4:20-33, Abstract (emphasis added)).

## II.  STANDARD OF REVIEW

Claim construction is a process by which a court determines the meaning and scope of patent claims.  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' " Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  When there is an allegation that a claim is ambiguous, or a dispute as to the meaning of a claim term, a court must "construe claims by considering the evidence necessary to resolve [such] disputes. . .[and] assign a fixed, unambiguous, legally operative meaning to the claim." Liquid Dynamics Corp. v. Vaughan Co., Inc., 355 F.3d 1361, 1367 (Fed. Cir. 2004) (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576,

1582 (Fed. Cir. 1996)).  The claim construction process is "simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims."  Embrex, Inc., v. Serv. Eng'g Corp., 216 F.3d 1343, 1347 (Fed. Cir. 2000) (quotation omitted).  Claim construction is a matter of law for the court.  Markman, 52 F.3d at 979.  A court's task is limited to construing controverted claim terms.  Vivid Technologies v. Am. Science & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999).

The claim construction analysis begins with the words of the claim.  Vitronics Corp., 90 F.3d at 1582; Innova/Pure, 381 F.3d at 1116 ("[A] claim construction analysis must begin and remain centered on the claim language itself. . . .").  The words of the claim are generally given their ordinary and customary meaning.  Vitronics Corp., 90 F.3d at 1582.  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  Phillips, 415 F.3d at 1313. The person of ordinary skill in the art views the claim term in the light of the entire intrinsic record.  Id.

The intrinsic record consists of the claim language, the specification, and the prosecution history.  Phillips, 415 F.3d at 1312.  "[I]ntrinsic evidence is the most significant source of the legally operative meaning of disputed claim language."  Vitronics Corp., 90 F.3d at 1582 (internal citation omitted).  "The claims, specification, and the file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely.  In other words, competitors are entitled to review the public record, apply the established rules of claim

construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention." Id. at 1583.

In addition to reviewing the available intrinsic evidence, a court may also receive extrinsic evidence "to aid [it] in coming to a correct conclusion as to the true meaning of the language employed in the patent." Markman, 52 F.3d at 980 (quotations omitted). Extrinsic evidence consists of all evidence external to the patent and prosecution history, including testimony of inventors or experts, dictionaries, and learned treatises. Id. "However, extrinsic evidence cannot be used to contradict the established meaning of the claim language." Gart v. Logitech, 254 F.3d 1334, 1340 (Fed. Cir. 2001). Ultimately, a court may arrive at the ordinary and customary meaning of a claim term by reviewing a variety of sources. Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1298 (Fed. Cir. 2003). These sources "include the claims themselves, dictionaries and treatises, and the written description, the drawings, and the prosecution history." Id. (internal citations omitted).

### III. ANALYSIS

The disputed claim term, "shield extending over the waveguide" (Doc. No. 1, Ex. 1, col. 4, lines 30-31) is not expressly defined in the claims or the specification. The parties' proposed constructions of that term are as follows:

| Plaintiffs' position: | Defendants' position: |
|---|---|
| No Construction needed based on Court's August 14, 2012, Opinion; | A projection into the cup receiving space which covers at least a portion of the waveguide. |

As instructed by case law, it is the Court's task to begin its analysis with the words used in the claim.

### A. Ordinary meaning

Defendants maintain that the shield is a projection, and that this proposed language is consistent with the '439 Patent (Doc. No. 75, Ex. 3, '439 Figs. 1 and 3; col. 2, lines 40-43). Specifically, the shield must be distinguished from the other claimed aspects of the cup holder. Moreover, the '439 Patent states that the shield functions "to direct the light downwardly into the cup-receiving space and not upwardly where it might cause irritating glare." (Id.) The conclude that in order to give meaning to the term shield, it must cover the waveguide.

In ascertaining the meaning of the disputed claim, the Court turns to the ordinary meaning. Because dictionaries are a source for determining ordinary meaning, the Court considers which the dictionary meaning is consistent with the claim term in the context of the claim and written description. See Abbott Labs. v. Syntron Bioresearch, Inc., 334 F.3d 1343, 1350 (Fed. Cir. 2003); Tex. Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002) (recognizing that dictionaries are useful tools in determining the ordinary meaning).

Webster's Third New International Dictionary (1993) defines shield as "[a] structure, device, or part that serves as a protective cover or barrier." Id. at 2094. It defines projection as "[a] jutting out." Id. at 1813. The Oxford English Dictionary defines shield as "[a] protective covering or shelter," and a projection as "[a]n object which projects or extends beyond the adjacent surface; a projecting part or thing." Id. at www.oed.com. Defendants' proposal introduces language that differs in meaning from

a protective cover or barrier. Further, to the extent that Defendants construe the projecting part as covering at least a portion of the waveguide, that construction is not consistent with the entirety of the disclosure of the '439 patent. The term extending over, unlike the term covering, does not connote hiding or concealment. (Compare Oxford English Dictionary definition of cover and extend; Webster's Third New International Dictionary definition of cover at 524 and extend at 804).

There is no intent expressed in the '439 Patent "to impart a novel meaning to the term" shield extending over the waveguide. See Mars, Inc. v. H.J. Heinz Co., 377 F.3d 1369, 1373 (Fed. Cir. 2004). In resolving Plaintiffs' motion for preliminary injunction, the Court relied on the claim language itself in rejecting Defendants' argument that Claim 1 required that the light be directed downwardly. Generally, the specifications and prosecution history in the intrinsic record may not further limit the claims beyond the limitations contained in the claims themselves. Teleflex, Inc. v. Ficosa North Am. Corp., 299 F.3d 1313 1326 (Fed. Cir. 2002) (citing Markman, 52 F.3d at 979). Courts may not simply import characteristics of a disclosed or preferred embodiment into the meaning of claim terms. Texas Digital Sys., 308 F.3d at 1204.

Instead, the Court found that the claim language included no distinction based on the direction of the light, only the inclusion of a shield extending over the waveguide–which distributes light at the cup holder. (See Doc. No. 33 at 7). Defendants' proposed construction creates limitations beyond those in the claim language itself.

### B. Inventors' Testimony

Defendants advance testimony from two of the three inventors to support their position as to the claim construction. Mayco characterizes the deposition testimony of George Hulse and Brad Townsend as supporting the view that the shield covers the entire waveguide, to "hide" or "block" the waveguide from view. (See e.g. Doc. No. 75, Ex. 1 at 26:2-7; 60:19-23). According to the testimony, the function and purpose of the shield is to prevent "some of the direct light from the lighted surface from glaring out at the driver, occupant, or the customer in the car." (See Doc. No. 74, Ex, 2 at 25:6-10). Defendants conclude that this testimony is consistent with their construction.

The district court may "rely on extrinsic evidence," including inventor testimony" to construe claims. Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005). Nevertheless, inventor testimony is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" Id. (citations omitted). The deposition testimony of the inventors is not entitled to great deference because the analysis relative to claim construction "must be based primarily on the record established at the time the patent was granted." Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 345 F.3d 1318, 1330 (Fed. Cir. 2003) (citing Tex. Digital Sys., 308 F.3d at 1202 ("When a patent is granted, prosecution is concluded, the intrinsic record is fixed, and the public is placed on notice of its allowed claims."); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed.Cir.1996) ("The claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely.").

The claim at issue does not require that the shield must **cover** the entire waveguide, as suggested by the inventors.  To the contrary, Figure 2 in the '439 Patent shows a shield that does not entirely hide the waveguide even as it extends over the waveguide because the shield has notches "for emitting additional light from the waveguide."  Therefore, the intrinsic record of the '439 Patent does not show that the patentees clearly intended to limit the claim term "shield extending over the waveguide" in the manner advanced by Defendants.

### C. Federal Motor Vehicle Safety Standards

Lastly, Defendants rely on Federal Motor Vehicle Safety Standard ("FMVSS") § 571.101, entitled, "Controls and displays,": which specifies "performance requirements of location, identification, color, and illumination of motor vehicle controls, telltales and indicators." (Doc. No. 75, Ex. 4).  Included in the FVSS is a section governing the "Brightness of interior lamps." (Doc. No. 75, Ex. 4 at 4).  It requires those vehicle interior lamps that are not used for controls or displays, but are illuminated conspicuously during driving, must either have an ability to lower the intensity of the light or to be barely discernible to a driver.  (Id.)  Pursuant to FVSS, here, because the waveguide is not adjustable, Defendants assert that it must be barely discernible to a driver, and conclude that the shield, therefore, must cover the entire waveguide to ensure compliance.

Although regulations may be helpful to claim construction, they are helpful only to the extent that they are probative of an "industry-specific meaning for a disputed

claim term." Mars, Inc. v. H.J. Heinz Co., 377 F.3d 1369, 1374 n.3 (Fed. Cir. 2004). The disputed claim term here is not brightness.

There is no industry standard meaning of the term shield. Although the FMVSS may be probative of an industry-specific meaning of a disputed claim term, such as the brightness of interior lamps, the Court declines to extend this extrinsic evidence as definitive of the interpretation of a shield extending over a waveguide.

## IV. CONCLUSION

For the reasons stated, the Court rejects Defendants' proposed claim construction. The shield extending over the waveguide is a protective structure that reaches over the waveguide.

**IT IS SO ORDERED.**

                                                  s/Marianne O. Battani  
                                                  MARIANNE O. BATTANI  
                                                  UNITED STATES DISTRICT JUDGE

DATED: October 7, 2013

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and electronic filing.

                                                s/Bernadette M. Thebolt  
                                                CASE MANAGER