UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL-MOGUL WORLD WIDE, INC., and
FEDERAL-MOGUL CORPORATION,

        Plaintiffs,         Case No. 11-15480

v.         HON. MARIANNE O. BATTANI

NJT ENTERPRISES d/b/a MAYCO
INTERNATIONAL LLC, and JVIS-USA LLC,

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff Federal-Mogul Worldwide Inc.'s ("FMWW") Motion for Partial Summary Judgment on its patent infringement claim (Doc. No. 110), and Defendants NJT Enterprises d/b/a Mayco (hereinafter "Mayco") and JVIS-USA, LLC's ("JVIS") Motion for Summary Judgment (Doc. No. 109). The Court heard oral argument on April 10, 2014, and at the conclusion of the hearing, the Court requested supplemental briefs. The Court has reviewed the supplemental filings, and for the reasons the follow, the Court **DENIES** Plaintiff's motion for partial summary judgment and **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment.

1

I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiffs FMWW and Federal-Mogul Corporation design and supply illuminated cup holders to the automotive industry. On May 22, 2001, FMWW received U.S. Patent No. 6, 234,439 (the '439 Patent), entitled "Illuminated Cup Holder Assembly." In 2009, Chrysler chose Plaintiffs to supply the illuminated cup holder assembly (the "WK/WD-LED") for the Jeep Grand Cherokee and Dodge Durango. Mayco, a Tier 1 supplier of injection molded plastic products for automobile manufacturers, was Plaintiffs' customer and contact during the design of WK-LED.

On October 1, 2009, Plaintiffs and JTN Enterprises, d/b/a Mayco entered into a Mutual Confidentiality Agreement ("MCA"), which governed their relationship during the development of WK/WD-LED. Mayco provided base geometry for basic styling and attachment points; Plaintiffs performed the CAD modeling. Pursuant to the MCA, Plaintiffs retained ownership of any confidential information shared with Mayco. (Doc. No. 116, Ex. F). In addition, Mayco was prohibited from "us[ing] or exploit[ing] the confidential information for any purpose other than the design and engineering of the WK/WD-LED cup holder. (Id.)

During the product development, Mayco experienced problems with the spring activated protrusions on the sidewall of the cup holder that keep the cup in place in the holders it was supplying to Chrysler for a different model-year of the Jeep Grand Cherokee. (Doc. No. 116, Ex. E Ramey Decl. at ¶¶ 17-18). Plaintiffs subsequently provided CAD files for the WK/WD-LED to Mayco, which included an improved finger design. The parties disagree as to the type of CAD files sent to Mayco, and whether the files were sent with permission. According to Plaintiffs, Mayco uploaded native CAD

2

files to Chrysler's online system and subsequently provided them to JVIS, a Mayco affiliate, for the purpose of developing a replacement cup holder. (Doc. No. 116, Ex. I at 54-55, 60-62).

In October 2011, Mayco terminated its relationship with Federal-Mogul Corporation, announced JVIS would be the new supplier of the WK/WD-LED, and began purchasing the Accused Product from a Korean supplier known as Duck-Il. Defendants incorporated the Duck-Il product into a larger assembly known as the "console" or "shifter bezel" assembly, which Defendants then sold to Chrysler. The arrangement continued until as recently as May 2013.

The parties were before the Court on a previous motion for preliminary injunction, which was denied, and a motion for claim construction. After Plaintiffs filed their Opening Claim Construction Brief, the Court dismissed Federal-Mogul Corporation from Count I, which advances the patent infringement claim.

FMWW asserts that it is entitled to summary judgment on its patent infringement claims as well as Defendants' counterclaims for declaratory judgment of non-infringement, invalidity, and unenforceability. In its brief, Plaintiff argues that Defendants committed patent infringement with respect to FMWW's patented illuminated cup holder assembly. Plaintiff asserts that the accused product is "virtually identical to an illuminated cup holder assembly manufactured by Federal-Mogul Corporation for Defendants before their relationship ended.

Defendants ask the Court to hold that the accused cup holders do not infringe the patent, that there was no breach of the Mutual Confidentiality Agreement or the Blanket Purchase Order, and that there has been no misappropriation of trade secrets.

3

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III. ANALYSIS

### A. Infringement of the Asserted Patent

Patent infringement analysis is a two-step process. Read Corp. v. Portec, Inc., 970 F.2d 816, 821-22 (Fed. Cir. 1992). First, the court construes the patent claim terms asserted to be infringed. Id. at 821. Second, the court compares the construed patent claims to the accused product. Id. Literal infringement, which is a question of fact, is found when the claims cover the accused product in a literal way. SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365, 376 (Fed. Cir. 1983). Here, Plaintiff bears the burden of proof on infringement. Because Plaintiff asserts a theory of literal infringement, it must show the WK/WD-LED practices every limitation of the '439 Patent. Kahn v. Gen. Motors Corp., 135 F.3d 1372, 1377 (Fed. Cir. 1998).

The parties do not dispute any relevant facts regarding the accused product; however, they "disagree over possible claim interpretations." General Mills, Inc. v.

Hunt–Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997). Consequently, "the question of literal infringement collapses into claim construction and is amenable to summary judgment." Id.

According to FMWW, there is no genuine dispute as to any material fact, and it is entitled to summary judgment. Plaintiff contends that the Accused Product was designed to be an embodiment of the Asserted Patent, which Defendants now manufacture and sell without a license.

Claim 1 reads:

> 1. A cup holder assembly for use in a vehicle comprising:
>
> an elongated waveguide;
>
> a cup holder bottom portion including a base and a side wall extending up from the base to define a cup-receiving space, the bottom portion further including a waveguide support disposed above the base, with at least a portion of the waveguide disposed on the waveguide support;
>
> a cup holder top portion disposed over the bottom portion and the waveguide, the top portion **including a shield extending over the waveguide**, whereby said waveguide is adapted to distribute the light at said cup holder.

(Doc. No. 1, Ex. 1 '439 Patent at 4:20-33, Abstract (emphasis added)).

There is no dispute that the WK/WD-LED cup holder assembly includes an elongated waveguide--a piece of plastic that propagates light through internal reflection. Nor do the parties contest that the WK/WD-LED cup holder meets the bottom portion as set forth in the '439 Patent. The argument focuses on the top potion disposed over the bottom portion and the waveguide including a shield extending over the waveguide, whereby the waveguide is "adapted to distribute the light" at the cup holder.

The only term that the Court construed is the "shield extending over the waveguide." In resolving the claim construction motion, the Court ruled that the shield extending over the waveguide is a "protective structure that reaches over the waveguide."

According to Defendants, the accused product does not meet the claim limitations. Defendants assert that the accused cup holder does not infringe Claim 1 for two reasons: there is no cup holder top portion, and there is no shield extending over the waveguide. FMWW asserts that the diffuser is the shield and cup holder top portion. The Court therefore directs its attention to the parties' respective arguments as to whether the Accused Product embodies each and every limitation of Claim 1.

### a. Is Diffuser the Shield and/or Cup Holder Top Portion?

In the WK/WD-LED cup holder assembly, the waveguide is hidden by a diffuser, the length of white plastic that runs along the perimeter of the cup holder. The diffuser appears as a glowing blue ring around the perimeter of the cup holder. (Doc. No. 110, Ex. A at ¶ 15). According to Plaintiff, the diffuser is the shield inasmuch as the diffuser extends over the waveguide and is located between the waveguide and the chrome piece. Plaintiff further asserts that the diffuser also meets the adaptation to "distribute light at said cup holder" by the waveguide. It diffuses the light from the waveguide to protect the driver's eye from receiving direct glare. FMWW concludes that the diffuser is the shield.

Defendants contest this assertion. They state that in the motions and filings leading up to the summary judgment motion, Plaintiff identified the chrome piece as the shield. Not only did former engineer for Federal-Mogul Corporation, Ralf Meyer-Wendt,

declare that the chrome piece was the shield and the shifting console cover was the "top portion," he testified unequivocally that the diffuser was not the shield. (Doc. 27, Ex. K). FMWW asserted that the chrome piece was the shield limitation of Claim 1 even after the Court issued its Markman clam construction order on October 7, 2013. The thirty-day window to amend infringement contentions passed without any change by Plaintiff.

In response to Defendants' assertion that it is too late for FMWW to argue the diffuser is the shield, Plaintiff states that it merely "elected to focus on the diffuser of the accused product because that feature <u>so clearly</u> satisfies the "shield extending over th waveguide" limitation as construed by this Court. (Doc. No. 121, emphasis in original). Case law does not prohibit FMWW from identifying more than one feature for a single claim element.

The documents in this case do not support Plaintiff's characterization. For example, in its Preliminary Infringement Contentions, Plaintiff asserted:

> [t]he chrome piece is a shield that extends over the waveguide that directs light at the cup-receiving space as required in the '439 patent at 2:40-32. It should also be noted that there is a diffuser that extends over the waveguide and is located between the waveguide and the chrome piece as shown below.

(Doc. No. 117, Ex. D). Despite Plaintiff's effort to recast this language as advancing both the chrome piece and the diffuser as shields, the mere mention of the diffuser and its location does not establish it as the shield. Although Meyer-Wendt made his declaration five months before the contention deadline, it is consistent with the scope of FMWW's infringement contentions. From the outset of this litigation, FMWW specified that the diffuser was not the shield.

7

In addition to the Meyer-Wendt declaration, Defendants rely on Plaintiff's response to a request for admission, in which it admits:

> Part No. X90006100BL, [which is Mayco's cup holder, pictured on p. 8 in Doc. No. 117] by itself, does not embody all of the limitations of any claim of the '439 patent, but denies that this part number, upon incorporation into a shifting console by Defendants, does not embody all of the limitations of any claim of the '439 patent.

(10/1/12 Resp. to Request for Admission No. 46). This admission supports Defendants' position. Plaintiff admitted that the part shown, which included a diffuser, but not a chrome piece, does not infringe. Therefore, Plaintiff admitted that the diffuser is not the cup holder top portion. In sum, the Court finds that FMWW is not entitled to summary judgment on its assertion that the diffuser satisfies the contested language in Claim 1 because it is the shield and the cup holder top potion.

### b. Does Patent Preclude Chrome Piece From Meeting the Shield and the Cup Holder Top Portion Claim Terms?

The parties agreed that the cup holder top portion is construed as a portion of the cup holder assembly separate from the bottom portion and disposed over the bottom portion and the waveguide. Plaintiff identified the chrome piece as the upper-most portion of the cup-receiving space and as such, is a part of the cup holder. Defendants advance several grounds for rejecting the chrome piece as the cup holder top potion. First, because the chrome piece is physically attached to the shifting console, Defendants conclude that it cannot be considered the top piece. The Court disagrees. The chrome piece is separate from the bottom portion and is disposed over the bottom portion and the waveguide.

8

Nor does the Court agree with Defendant's second assertion--that the placement of the diffuser between the chrome piece and the waveguide means it is not disposed over the bottom portion and the waveguide. There is no requirement in the language of Claim 1 that the top portion be disposed directly over the waveguide with nothing in between the two.

Finally, the Court is not persuaded by Defendants' assertion that, as a matter of law, the chrome cannot be the cup holder top portion and the shield because the shield must be separate from and in addition to the top portion, otherwise the shield limitation is superfluous. The "including" language of Claim 1 does not necessitate any additional structure, provided the cup holder meets the shield extending over the waveguide requirement. Consequently, the chrome piece may serve as both the shield and the cup holder top portion.

Case law supports this reading. For example in <u>Aspex Eyewear, Inc. v. Altair Eyewear, Inc.</u>, 288 F. App'x 697, 701-02 (Fed. Cir. 2008), the plaintiff brought an infringement claim based on its patent for secondary eyeglass frames that attached to primary eyeglass frames through magnetic attraction rather than mechanical clips. In reviewing the lower court's construction of claim language, the appellate court observed that the claim identified "a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including a middle bridge portion and an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary spectacle frame including a middle bridge portion." <u>Id.</u> The lower court construed the claim, concluding "frame" was "an eyeglass device that includes, at least, a bridge and rims." <u>Id.</u> at 702. The appellate court reversed, finding that a frame was not limited to a frame with rims.

9

In rejecting the construction, the appellate court observed that "the district court relied on a linguistic analysis of the claim language, finding that since the frames must support the lenses 'therein,' the lenses must be supported 'in' the frame and finding that since claim 1 requires that the frame 'include[ ]' a middle bridge portion, it must include other components." Id. Upon review, the appellate court determined that the term "therein" did not limit the frame to one that has rims; it merely meant "in that place." Id. Consequently, "[f]or a glasses frame to support the lenses 'therein,' the frames must hold the lenses in place." Id. The court further observed that the use of "including" did not support the rim limitation. "'Including' is generally an open-ended term that does not preclude additional elements, but 'including' does not require additional, unspecified elements as the district court found." Id.

    The reasoning likewise applies here: the term "including" does not require that the shield be something different than the cup holder top piece. Accordingly, the Court rejects Defendants' position that the chrome piece cannot, as a matter of law, be the cup holder top piece and considers Defendants' additional argument that the chrome piece cannot, as a matter of law, be the shield. Defendants argue that because the chrome piece is "radiused away," it provides no protection to the waveguide. Further, Defendants conclude that the location of the chrome piece, above the diffuser rather than the waveguide, supports their position. The waveguide is surrounded and protected by structures other than the identified chrome piece.

    The language in Claim 1 does not mandate that the shield extend immediately over the waveguide, merely that it extend over the waveguide whereby the waveguide

distributes the light at the cup holder. Nor does Claim 1 require that the shield reach over the entire waveguide to act as a protective structure.

Accordingly, Defendants are not entitled to summary judgment.

### B. Validity of the Patent

#### 1. On-sale Bar

The parties contest whether the Asserted Patent is invalid under 35 U.S.C. §102(b), as anticipated because the claimed subject matter was "in public use" or "on sale" in this country more than one year before the filing date of the patent. To satisfy the on-sale bar, two conditions must be met before the critical date: the claimed invention "must be the subject of a commercial offer for sale; and "the invention must be ready for patenting." Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67 (1998).

To satisfy the commercial offer for sale requirement a sufficient degree of identity between the product offered for sale and the patented invention must be demonstrated. See Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1353 (Fed. Cir. 2002). A commercial offer is one which "the other party could make into a binding contract by simple acceptance." Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1048 (Fed. Cir. 2001). Public use is "any use of [the] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." In re Smith, 714 F.2d 1127, 1134 (Fed. Cir. 1983).

Application of the on-sale bar is a question of law, Brasseler, U.S.A. I, LP. v. Stryker Sales Corp., 182 F.3d 888, 889 (Fed. Cir. 1999), so Defendants must demonstrate the challenged conduct meets the on-sale bar with clear and convincing evidence. Elan Corp. v. Andrx Pharms., Inc., 366 F.3d 1336, 1340 (Fed. Cir. 2004).

There is evidence suggesting the bar might be applicable; however, the record before the Court does not support a conclusion that there is no genuine dispute. Defendants rely on the testimony of James Anderson, joint inventor of the '430 patent. Anderson testified that Federal-Mogul Corporation presented "waveguide-illuminated cup holders" to potential customers in the mid-1990s. (Doc. No. 117, Ex. I at 23-24). This conduct occurred before the critical date for § 102 prior art, which in this case, is December 8, 1998. Anderson testified that the "DLS Cup Holder" was demonstrated to the Big Three in the 1996-97 time frame. (Id. at 30-31). Defendants further contend that Anderson conceded that Claim 1 of the '439 patent covers the DLS Cup Holder, and that it practiced every limitation of claim 1. (Id. at 28, 30).

Anderson's testimony cannot be characterized as "clear and convincing." It is vague as to exactly when and to whom he made presentations. Moreover, the "general rule in patent cases requir[es] corroboration of oral testimony asserting invalidity of a patent." Young v. Lumenis, Inc., 301 F. Supp. 2d 765, 769 (S.D. Ohio 2004). See Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 740 (Fed. Cir. 2002) (observing that "[h]istorically, courts have looked with disfavor upon finding anticipation with only oral testimony"). Corroboration is needed regardless of whether the oral testimony is by an interested or uninterested party. Finnigan Corp. v. Int'l Trade Comm., 180 F.3d 1354, 1367 (Fed. Cir. 1999) (noting that "the need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation (e.g. because that party is the accused infringer) or is uninterested but testifying on behalf of the interested party"). Here, Defendants have not offered corroborating evidence; the testimony offered concerns events that occurred many

years before this litigation, and Anderson testified he was guessing. Accordingly, the Court denies summary judgment on this ground.

### 2. Inequitable Conduct

In the alternative, Defendants argue that '439 patent is unenforceable for inequitable conduct. To prevail on this contention, Defendants must show, by clear and convincing evidence, that "the patentee acted with the specific intent to deceive the Patent and Trademark Office." Star Scientific, inc. v. R.JJ. Reynolds Tobacco Co. 537 F3d 1357 (Fed. Cir. 2008). Consequently, Defendant must show the applicant knew of the reference, knew it was material, and made a deliberate decision to withhold it.

Defendants maintain the inventors knew the DLS cup holder was material to the patentability of the '439 patent, and had it been disclosed to the Examiner, the patent would not have issued. Both inventors, George Hulse and Anderson, signed a Declaration stating that they had reviewed the contents of the application, including the claims, and they acknowledged their duty "to disclose information which is material to the examination of this application." Despite their declarations, neither disclosed the DLS cup holder.

Although the Court finds inferences favorable to Defendants may arise from this evidence, it cannot be characterized as clear and convincing as a matter of law. Accordingly, the Court denies summary judgment on this ground.

### C. Breach of the Blanket Purchase Order (Count 3)

Paragraph 6 of the Blanket Purchase Order's terms and conditions requires that Seller "submit its termination claims within thirty (30) days after notice of termination is given." Plaintiffs conceded the claim for termination costs under the Blanket Purchase Order was untimely. (Admission Request No. 80). Plaintiffs also conceded that Defendants did not breach any term or condition of the Blanket Purchase Order. Therefore, Defendants are entitled to summary judgment on this claim.

**D. Breach of Contract (Count 2)**

Plaintiffs entered into a Mutual Confidentiality Agreement ("MCA") with Mayco, effective October 1, 2009. Paragraph 4 of the MCA exempts from confidential status "information. . .available on a nonconfidential basis from a source other than the Disclosing Party or its agents through no fault of the Receiving Party." (Doc. No. 109, Ex. A). During the course of discovery, Plaintiffs identified the breach as arising out of the bill of materials and supplier lists related to the cup holder. Because Terry Gibney, a Sales Manager for FMC, testified these items are routinely provided to the Original Equipment Manufacturers, Defendants seeks an award of summary judgment. (Doc. No. 109, Ex. F). Plaintiffs do not contest Defendants' assertion; nevertheless, Plaintiffs argue that the breach of contract also extends to CAD files provided to JVIS. Defendants argue that Plaintiffs waived this theory during discovery as evidenced by the response to their interrogatory.

Specifically, Defendants' Interrogatory No. 3 reads:

Does Federal-Mogul contend the 'proprietary information' (see FAC ¶ 30) of Count 2–'Breach of the MCA' is the same subject matter as the 'trade secrets' (see FAC ¶¶ 38 and 39) of Count 4–'Trade Secret Misappropriation.' If not, describe with particularity the subject matter of

each count, explaining any distinction(s) between the 'proprietary information' and the 'trade secrets.'

In preparation for a hearing in front of the Magistrate Judge, the parties resolved their dispute regarding Interrogatory No. 3. Plaintiffs "agreed to provide the following supplemental response," which was "acceptable to Mayco." (Doc. No. 42). The Response reads:

> Subject to the foregoing General Objections, Federal-Mogul responds that it regards the bill of materials and supplier lists for the illuminated cup holder assembly as proprietary information, for which recovery is sought pursuant to Count 2 of Federal-Mogul's First Amended Complaint. The subject matter of Count 4 of Federal-Mogul's First Amended Complaint is described in its response to Interrogatory No. 1.[1] With regard to subject matter, Counts 2 and 4 are mutually exclusive.

(Id.) The Magistrate Judge subsequently entered an order reflecting the supplemental response was deemed part of the interrogatory answer. (Doc. No. 61). Defendants, therefore, conclude that Plaintiffs cannot bring this claim. They conceded that the contract claim and the trade secrets claim are mutually exclusive.

Plaintiffs did submit a Third Supplemental Response to the interrogatory in which they recast their prior response as a concession that **recovery** for the breach of contract and misappropriation claims are mutually exclusive regarding the use of the trade secrets. Further, based upon the third Supplemental Response to Defendants' Interrogatory No. 3, Plaintiffs seek to advance their claim that Defendants misused the

---

[1]The response to Interrogatory No. 1, which required Plaintiff to identify its alleged trade secrets with particularity, and explain why those secrets were not extinguished when the cup holders entered the public domain, addressed CAD files. Plaintiffs agreed to provide an enumerated list identifying the specific features in the CAD files they deemed trade secrets.

CAD files, which meet the definition of confidential under the MCA and therefore the source of the breach of contract claim and the misappropriation of trade secrets claim.

In reviewing the discovery responses in this case as well as the proceedings in front of the Magistrate Judge, who concluded that Plaintiffs were stuck with their "mutually exclusive" assertion, the Court agrees with Defendants that Count 2 is limited to the materials and supplier lists. Because Plaintiffs did not dispute Defendants' argument on these items, summary judgment for Defendants is granted.

### E. Trade Secret Misappropriation Claim

Under the statute, a trade secret includes "information" that

> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mich. Comp. Laws Ann. § 445.1902 (West).

"The first element a plaintiff alleging misappropriation of trade secrets must prove is that the information at issue actually constitutes a trade secret." Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 410 (6th Cir. 2006). Consequently, the plaintiff must present evidence "that sufficient measures have been taken to guard the secrecy of the information and preserve its confidentiality." Dice Corp. v. Bold Technologies, 913 F. Supp. 2d 389, 406 (E.D. Mich. 2012) aff'd, 12-2513, 2014 WL 260094 (6th Cir. Jan. 24, 2014)

According to Defendants, Plaintiffs' claim, which consists of CAD modeling data for the cup holders, fails because (1) Chrysler owned the CAD data that is the subject of

16

the trade secret allegations; (2) Plaintiffs furnished the CAD data to Mayco and Chrysler as a common practice in the automotive industry; and (3) the cup holder is publically accessible after it is installed in Chrysler vehicles. The Court has reviewed Defendants' arguments and finds factual disputes require the request for summary judgment to be denied. First and foremost, the witness testimony upon which the parties rely to support their respective positions fail to distinguish between CAD data and native CAD files, and STEP files. Further, the witnesses may or may not have established first-hand knowledge about the distinctions; nor is it clear that the witnesses had first-hand knowledge about Plaintiffs' procedures for safeguarding information.[2] Likewise, it is not clear what information actually was provided to Defendants.

The parties disagree as to whether the information is publically available through scanning and reverse engineering, and even if information is available, whether the time required to replicate the product renders it readily available as required by the statute. See Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 899 (Minn. 1983) (observing that the time involved in reverse engineering is a factor in determining whether the information is readily available). Finally, although there is testimony that the features of the waveguide are measurable to the "ten-thousandths of an inch," the testimony is disputed as to the value of this information relative to reproducing a substitute cup holder. (See e.g. Doc. No. 116, Ex. H at 62; Ex. E at ¶¶ 12-16).

In sum, there are genuine, material factual disputes, and the Court denies summary judgment on this claim.

---

[2]Defendants filed Objections to the Testimony of Terrence Gibney (Doc. No. 118) and Dave Ramey (Doc. No. 119) to avoid waiver to the inadmissibility of this evidence.

## V. CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **GRANTS in part and DENIES in part**, Defendants' Motion for Summary Judgment. Therefore, Counts II and III are **DISMISSED**.

**IT IS SO ORDERED.**

Date:  November 3, 2014                         s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 3, 2014.

                                                s/ Kay Doaks
                                                Case Manager